We have Judge Barrett. I'll be presiding and we have Judges Mannion and Brennan also on the panel. Judge Mannion is participating by phone so you won't see his his face. You'll be able to see the clock right up there and I'll be watching your time. It's 17 minutes I believe. We reserve three for all. Yes, so it will show you when you hit the three and I'll watch it for you as well, Mr. Epstein. Okay. And you're the preside. Who's the presiding judge? Are you? I am presiding, yes. Okay, thank you. So you may begin, Mr. Epstein. Thank you very much. My name is Richard Epstein and I, along with Michael Rackle, co-counsel in the detectives against the city of Chicago. The case here raises profound issues of both law and fact and I would like to concentrate first on the legal issues and then show how they tie into the facts that are related. The key issues here as presented by the city are two. The first is whether or not the creation of the Obama Presidential Center in Jackson Park is authorized by the Museum Act and the second and I believe more important issue is if it is authorized by the Act or whether or not it complies with the requirements of the Public Trust Doctrine. In this particular case, the city has taken two positions, both of which we strongly disagree with. The first position that it takes is that the only thing that has to be done with respect to Jackson Park, given that it was quote never unsubmerged land, never submerged land, is to show that there is sufficient statutory authorization for the thing and that there is no independent requirement above and beyond that. All other controls are to be regarded as simply political. And the second position they say is if that is wrong then there is a kind of a trust duty involved but the trust duty is one which says that quote unquote if there is any benefit whatsoever that the look at the costs associated with this particular operation. And we think that the following situations are true. If the first of these propositions is indeed correct then it's not just that you can give away the 19 acres of Jackson Park that are going to be devoted to the center but you could give all of Jackson Park to the Obama Foundation or indeed to any other kind of body. So that position is so extreme that it cannot be correct because what it means is that the Public Trust Doctrine is not a standard. Even though as I will say later it is something which is essentially designed to override any subsequent conveyance or decisions that are made by the city if its requirements are not satisfied. Mr. Epstein, before we talk about the merits of the Public Trust Doctrine I have a question about standing. Why do the plaintiffs have standing even to press the Public Trust Doctrine claim and I understand that they would have standing in Illinois state courts but Illinois state courts have their own thing and we're bound by article three so explain to me what the cognizable interest is. Well the cognizable interest is if you look at the PEP cases they said that each and every citizen has an undivided interest in a particular property that has been dedicated to the parks and it turns out that it then says is under Illinois law but it says is that the only way that the Public Trust Doctrine will have any vitality any meaning is if it turns out that ordinary individuals are allowed to enforce it in court. So the position that we have taken which was taken in the Lucas case is that given that undivided interest given the fact that there's a Public Trust Doctrine that's cognizable there is under the 14th amendment a procedural due process claim and then as a supplementary jurisdiction to that there is a claim for the Public Trust Doctrine. The two have a common nucleus of facts and they clearly overlap one to another and our position and it's the position of the city as well I might add is that those two things are sufficient to bring us here. Well let's see you you would be able as a citizen taxpayer to vitiate your rights under the Public Trust Doctrine in Illinois state court and to the extent that you're using the Public Trust Doctrine to sort of as a vehicle for making your procedural due process claim you know as the vehicle for saying that you have a property right at stake it's still dependent I mean it looks a lot to me like Lujan I mean it seems to me like this is an undifferentiated interest that Illinois state courts can enforce. Well I mean it is undifferentiated I think there's no reason to say that it's not but it's also the kind of issue that has to be enforced in the following sense it's like a charitable situation and whenever you're dealing with charitable trust or dealing with derivative actions the point is that any given person is allowed to bring that action for the benefit of everybody else and I don't think that given the fact that they're standing both in law and equity that a standard type of equitable action seeking injunction should be something that is ruled out of basis with respect to federal courts. Okay go ahead with your merits point. Okay well on the merits claim what happens is that if you look at this the second version of this is that they say so long as there's any benefit whatsoever that goes to the city at large then you cannot examine the associated costs given in this particular situation. Our view is that this is profoundly incorrect because that test essentially means that for any particular kind of transaction that you have there is always going to be some kind of benefit that you can identify and if you ignore all the costs that are associated with the operation that test is essentially a rubber stamp which says there will never be a breach of fiduciary duty even though there is a cognizable public trust doctrine that applies in this particular case. So the question if we were to apply that standard how would courts be differentiated from zoning boards? Well for example the the best way I think to do this is to say first of all as a general matter the fiduciary duty boards uh duties only kick in in those particular situations where there's some serious deviation from what would be the appropriate norms and we have tried to outline in great detail all the irregularities that were associated with the way in which the zoning board delegated we believe the authority to the Obama Foundation to make this particular kind of decision. Secondly it turns out that if you look at the Pepke case which is the key substantive case under Illinois law what it does is it sets out a series of five particular requirements that have to be satisfied in order for a deviation from the original terms of the dedication to be there. So the way in which this case evolves is as follows. Back in 1869 there were a series of grants for Jackson Park and for Washington Park and these were given to park commissioners to enforce and these dedications were said to be permanent and irrevocable. What happens is that's an exceptionally rigid way to look at the particular world and so what happens is the courts both in Illinois and everywhere else then introduce these five Pepke factors to see what kinds of deviations that you could make from the uncompromising state would be permissible. There was a long line of cases before Pepke which dealt with this the most notable of the Supreme Court cases is a case called Reicheld Durfer I think I've pronounced it correctly in which the issue was whether or not when you had public trust land are supposed to be held free and clear forever you could put a fire engine station there when it was challenged and the court said yes this is certainly public trust land but the deviation in this particular case is sufficiently small that it turns out that we do not have to worry about. So under the Pepke case what they did is they developed and this was done strictly by an Illinois court a series of five tests we think that in fact each and every one of those tests is violated in this particular case and as you start to go down them the first of these things it starts to announce that essentially what you're really worried about in all of these particular cases is whether or not there's a public body that is going to put and be in control of the overall situation. It is manifest here that the a an exclusive quite call it a use agreement but if you go back to the original 2015 resolution this was supposed to be a lease for 99 years it is essentially ironclad there are no particular exceptions to it the only oversight that the city has is the standard in any lease about the ability to inspect to make sure that the premises are in order of something of the sort but nothing more. So are you saying that we should look through this lease and say this isn't really a lease? Well it's exactly well no we're not saying that we said you should look through this use agreement and say that it really is a lease. A lease is essentially defined as an exclusive transfer of a term of years with exclusive control on behalf of the lessee. What happened is the 2015 resolution when it was originally put into place announced that what it was going to do is to create a lease of 99 years with renewable terms. When the Lucas decision came down it became clear in that case that Judge Dara had decided that a lease was tantamount to an outright transfer of a property interest therefore caught by the public trust doctrine so the city went back to the boards again and what it did is it transferred this lease agreement into a use agreement but there is no difference whatsoever in any of the substantive terms of the formal lease and the use agreement they are both identical so this is just a question of words. In other situations there have been many other kinds of arrangements that the city has made and the park department has made they use different terminology they have different ways but in this particular case the key point is that this should be treated as though or an outright transfer of the interest for ten dollars the only issue that is retained is a conditional reversionary interest which is infinitesimal with respect to its value and so what we say is there is in this particular case if you look at the entire situation is controlled by public body moving on let me just take them slightly out of order the question they say is that the diminution in area has to be small relative to the entire park and there is a very interesting question of how you calculate both the numerator and the denominator in this particular case what the city says it's a mere 3.4 percent of the entire Jackson Park because the park itself has about 560 acres but the mirror gives away the game first of all it indicates that the city believes that it cannot make an outright transfer but it has no theories to explain what limitations are appropriate or not but there were 19.3 acres that were given away in addition in order to complete this project you're going to have to widen Lakeshore Drive going south and Stony Island Avenue one to the west and one to the east of this that's going to take up another 9.1 acres then you're also going to rip up most of Cornell Avenue and that's going to take out about another five or six acres if you look at the total denominator that's a very misleading number because it turns out that over half of Jackson Park or about half Jackson Park is a lagoon in which nothing can be built there's Wooden Island which is isolated and then there's a golf course and a driving range to the south and the east of the park so if you're talking about the actual intensity of use with respect to the park what you're doing in this particular case is essentially taking away probably 90 to 95 percent of the value judged by the number of cars that have to use Lakeshore Drive and so forth and so what it is is this is a massive transfer in terms of the total value of the issue it's the high valued uses that are done the city claims well the roadway is busy and it's noisy it is certainly busy it is not that noisy but what's happening is you're then completely disrupting all of the previous uses that were existing and when you start looking at the pesky factors they are going to make these kinds of changes they better be relatively negligible compared to those of the whole and it also turns out I see there's a question come just to finish the sentence that it don't change the essential character of the park and this particular deviation given the pesky situation flunks both of those tests Judge Manley did you have a question I see a green light coming up I guess not well I didn't mean to do that give me the green light but go ahead I'm happy to answer any questions I have a question mr yes so it's not quite that the pepki factors say that the change has to be negligible it says that it has to be negligible when compared to the greater convenience to be afforded those members of the public using the new facility and it seems to me that what we have here is a decision by the city of Chicago that the Obama presidential library and it's not a library okay digital access not just paper access fine this project that is being planned by the Obama foundation is a greater public purpose and as Judge Brennan said before it feels like we're sitting as a zoning board if we second-guess that judgment about the relative benefits of the various uses of the property that could be on the table but that's exactly what they did in the pepki case to be clear about it when they grant the standing they grant the standing not so that they could rub the stamp the decision so that they can make an independent review of it and what happened in that particular case is absolutely on all procedural and substantive issues completely different from the situation as it exists in this particular case so on the procedural side it wasn't rushed through in the way this was done uh very quick hearings uh you had it turned out uh this was a zoning board had 75 people testified before any of that evidence was um incorporated the decision was finally made in pepki it was a very long and drawn out process in which they decided where and how many schools should be located it took four acres out of a larger park it used them completely in public hands and what it did is it fit within the definitions of all the previous cases that it was a minor deviation that was consistent by and large with the overall dedication this case is massive in terms of it none of the other cases including pepki require that the government relocate roads we have tried to estimate that the value of the land here perfectly reasonably is probably close to 200 million dollars being given away for ten dollars it turns out you're shifting when you're talking about the roads and whether they should be calculated in the price that's not so much about the public trust doctrine that's about the cost of the project no no the public trust doctrine requires that you make an assessment of the pluses and the minuses of the particular project and the project can never be defined so narrowly that the only thing that it covers is the conveyance of the land this is a comprehensive plan the city put it forward as a comprehensive plan so what we are saying in this particular case we are not a zoning board nobody would ever want to come into court here or any more under the business judgment rule if what you decided to do is to widen cornell drive or to change the stoplight or something of the sort this is something which completely destroys the essence and the overall character it will surely require that the jackson park be delisted from the registry of national objects which it was put on in 1972 it will require immense public expenditures and these are not for the benefit of anybody there'll be massive inconvenience on the traffic there'll be a destruction of trees that will start to take place one finds it very difficult but to figure out what the exact numbers are given the intangible nations of the assets but this is a transfer net to the obama foundation of at least at least a half a billion dollars one way or another pepke was no transfer to any public private to any private party whatsoever the city of chicago has weighed those factors and made that decision and i mean when i'm sitting in traffic on stony island avenue i think i'll probably be internally wishing and cursing the the day that the the roads um were that the traffic was rerouted and the roads were um narrowed for the sake of the project but but that's that's the board's decision no it's not i mean if there's a public trust doctrine then there has to be at least some way to describe what counts as a breach of fiduciary duty a breach of fiduciary duty is not the standard well if there's a public trust yes of course it's the standard a public trust doctrine requires that you essentially act and the usual rules are that there not be improper delegation which in this case there surely was because the entire decision wasn't made by the city council what they said is they would defer to the sound judgment quote-unquote of the obama foundation to give an idea of how little control that the city had over this the original plans called for the tower a 235 foot tower away to be 60 or 100 feet further south than it was the obama foundation unilaterally announces that it wishes to move this thing north and then it requires that you close the midway plazons going east of lakeshore drive with massive traffic disruption i mean if it turns out that the public trust doctrine simply says if the city authorizes this and nothing else matters then clearly we lose but in this particular case the pepki case says you can't do this if you look at the last paragraph it says that we always have to compromise between keeping the pristine conditions that are associated with this and making some adjustments at the margin to allow for other things if one does a simple comparison by way of analogy obama foundation is nothing like the situations we have putting a firehouse here extending a road there putting a bridge in this particular case what soldier field a soldier field was a different case entirely they did not reroute at all uh anything associated with lakeshore drive they did not cut down any trees what they did is they made a financial arrangement which essentially changed the internal structure and can i just finish this one sentence um and uh what they did is they retained enough control that they could have an fire so it wasn't an outright transfer thank you thank you mr epstein miss solomon thank you your honor and may it please support in 2016 the illinois general assembly specifically amended the park district aquarium and museum act to include presidential library centers and museums along with the museums that can be located in public parks that purposeful act after more than a century of experience with museums in public parks reflects the legislative intent that presidential centers like other museums provide cultural and educational benefits more broadly the museum act reflects the legislature's recognition that pairing cultural institutions with parks is a legitimate use of public parkland chicago in particular has relied on the museum act to develop an enviable collection of privately operated incredibly diverse museums in public parks miss solomon can i ask you to address the standing question that i asked mr epstein about why and and you may not think they do have standing to bring their public trust claim sure um we do think there there is standing to bring the public trust claim of course it was brought as a supplemental state law claim to the claims that were within federal jurisdiction but on the state law claim in particular plaintiff's standing derives from the illinois public trust doctrine it was recognized in the pepki case the court there actually overrules a prior case called droves in which the court had held that individuals taxpayers not have standing to challenge to bring the parliament as i said to mr epstein that's true and as a matter of illinois law illinois courts can't adjudicate these cases and there is standing but standing under illinois law is an affirmative defense it's not jurisdictional and it's broader than it is for purposes of article 3 so i don't dispute that they would have standing to assert this claim in state court but my question is why do they have standing to assert it in federal court and it being a supplemental claim doesn't help them still would have to have standing to assert this particular claim sure i'm sorry i think i took a little too long to get to the point um that i started with jurisdiction and then moving on to standing and the reason i focused on pepki is because what the court recognizes there is a common law right of standing to enforce the public trust doctrine as i say by overruling a prior case now luhan is very different luhan was an attempt to enforce a federal statute just to enforce the federal statute but federal standing laws have always recognized common law interests and the protection of common law interests as within standing for purposes of federal law it is different from luhan because that standing right is given as a matter of common law and whether the right is given as a matter of common law or by statute as it was in luhan it's still has to satisfy the test that there be you know a cognizable injury causation redressability can you think of any other case in which the common law right was for one that is held in common by the public as opposed to a common law right of property or contract well i mean there's illinois central itself but that was different because the railroad clearly had a cognizable injury i mean it invested all of this money in developing the lakefront property um so that that wasn't a member of the public just bringing a public trust claim well that that's true um so um i guess i would just you know go back to the idea that um property rights and common law standing is developed by state law it is enforceable uh in federal court even as a matter of federal law um we you know obviously the court will resolve this for itself but of course the parties have you know the city hasn't challenged it um and the supplemental claim was connected well enough to the federal claims did it be challenged standing on some grounds below though and you won on some of them didn't the district court dismiss some of the claims for lack of standing yes your honor i'm sorry to interrupt and and that was um a thought very similar to lujan because that was an aspect of the procedural due process claim the plaintiffs brought that alleged standing based i'm sorry that alleged injury based on the aesthetic harm to the park and we did move on standing grounds against that the district court accepted that at the motion to dismiss and never dealt with that um aspect of the procedural due process claim again but it rejected it retained i'm sorry it retained the two other aspects of the procedural due process claim one of which was the public trust doctrine injury and the and um then the takings claim and then of course the supplemental state law claims as well miss solomon concluded that the um federal claims should be dismissed and all that was left was the public trust claim which as you pointed out is a 1367 1367 would be the basis for jurisdiction do you think that would properly be dismissed no your honor i think when the district court exercises its discretion under 1367 which commits that decision to the district court in the first instance the district court here exercised its discretion according to at least two recognized factors that this court acknowledges are exceptions to the dismissal of state law claims when the federal claims are dismissed and those are a commitment of substantial resources to the case and um a very very clear answer on the state law claim and we think both of those apply here the district court twice mentioned in its summary judgment decision that there had been full discovery in this case there was obviously a commitment by the parties to the forum as well and the resolution of the state law issue um as i'll explain in a moment um is extremely clear um and you know beyond that we would stress the vital public interest in enabling the city to move forward on this important public project free of the cloud of litigation there just is no reason to send a state law issue with a clear answer to the state court at this late date and plaintiffs of course do not ask for that yes i think judge brennan had a question miss solomon there's much discussion in the briefs concerning formally submerged uh and the the status of submerging is pepke the only case cited by either party involving a transfer of lands which were um not submerged and never been submerged no it's not your honor in addition there's the furlong case um um a fine arts building built for the columbian exposition it's now the museum of science and industry now that is closer to the lake but not that much um there are also a few illinois appellate court decisions um and those are cited in our briefs uh french air and there's another railroad case but you know the the distinction between formally submerged and um never submerged and again by never submerged we of course mean at the time of illinois statehood that runs through the entire body of illinois cases um dealing with the public trust doctrine and and reading that entire body of cases we derive the principle that for land that like like jackson park like washington park which is where the pepke case arose from and those of course both come from the same 1869 statute um and so we're treated the same way for purposes of illinois public trust doctrine um those cases make very clear that a court considering whether to permit a new use of public park land should look only to whether the um use is specifically authorized by the legislature and here it is as i mentioned at the outset this was a purposeful amendment to the museum act which itself was very clear that museums can be located in public parks but a specific purposeful amendment to include among the museums as a matter of definition presidential centers libraries and museums um now i heard counsel say at the outset that under the city's view the public trust doctrine kicks in only for the alternative test that deals with formerly submerged land that is not correct not correct and it's not our position the the there is a piece of the public trust doctrine that is involved with not submerged lands and that's the pepke case among as an example and under that case for those kinds of lands the test is sufficient public authorization i'm sorry sufficient statutory authorization um and that does not make the public trust doctrine a dead letter the public trust doctrine does two things it gives plaintiff standing uh to litigate these cases and it does put the court to the task of looking for a specific statutory authorization um so we do think that even that piece of it is a public trust issue but of course a different public trust issue from the submerged lands now the district court here agreed as a matter of law that the jackson park site selecting the the city's use of the jackson park site for the obama presidential center did not violate the public trust doctrine because the site was not submerged at illinois statehood um and while the court agreed it was not necessary to examine the common law doctrine applicable to submerged lands the court concluded that for that on that examination there was no violation either that inquiry is in fact not necessary in this case plaintiffs no longer even argue that jackson park was submerged and they don't argue any principles applicable under illinois law even to submerged land but regardless the legislature's decision to put formerly submerged land to a new use is reviewed to determine whether the new use will continue to benefit the public and here we explain in our brief the obama presidential center's substantial public benefits and these i am sure are obvious besides and because the foundation's core mission is to build and operate the opc and to provide these benefits to the public the foundation's private interest is merely incidental to the opc's public focus now i want to could you address mr epstein's point about the percentage of land that's at stake when we look at the factors that the pepki court drew from wisconsin law the five factors you know that your estimates of the percentage have the wrong denominator sure um i want to start by pointing out that that is not the pepki test the court discusses the what it calls the wisconsin factors in one paragraph which it begins by saying in passing and so those are not the factors or the case the issues that control under illinois law what controls is simply whether there is sufficient statutory authorization and after that you know the inquiry into cost benefits and um benefit maximization and fair value this court will scrutinize illinois law in vain for any suggestion that those are the factors that the court considers for never authorization which is i say there is very clear language in the museum act the only case that brings up these five factors from wisconsin law i mean it clearly is just dicta and pepki i'm just wondering how rooted it may have become in illinois law otherwise it's the only one that's coming to my mind at the moment your honor if i think of another as soon as we're finished thank you or um so um there are a few other corrections that i'd like to make to council's discussion of pepki because it is so central to adults consideration uh the first is that the factors mentioned there are not the test and we've discussed that um i also want to um make sure the court is aware that you know this is not a these this is a use agreement council referred to the 2015 ordinance which did use the word lease that ordinance concerned the city's acceptance of the um land as a transfer from the park district it is not an arrangement with the obama presidential center itself the 2018 ordinance which does authorize the use agreement with the obama presidential center clearly refers to it as a use agreement and not a lease and it is not a lease um i also wanted to address you know the idea that the obama presidential center the the allowance of that use is not a um a private use um the obama presidential center is a 501c3 um found a charitable organization similar to the foundations and institutions that run the other museums in chicago parks it is committed by the use agreement to maintain hours consistent with other museums in public parks it has the parkland open during the same hours that chicago park district parks are open um it works with nara the archives administration which has a new model for record preservation for this presidency um to reflect that digital is the way of the future and that some records were were digital from the outset they were simply never created as paper records and and there will be access to those records at the museum so it is a very very public purpose and as a result of that um i mean we would certainly take the position that it wouldn't matter if the actual commitment of property were larger but it isn't and the important thing here is that the museum act itself defines museums as a park purpose we don't have a situation where we're taking parkland and giving it a non-park use we're taking parkland that used to be used simply as a park with grass and trees for the cultural and recreational purposes that parks provide and we will now have a park with other park purposes namely the cultural and recreational um benefits and opportunities that a park with a museum has it's still a park and it's still purposes and that's because the museum act itself defines museum as a park purpose miss salami can i ask you a question about the nipa reports the draft reports and the rule 60 motion um you know as draft reports and as things that don't go to the question of the legality of the transfer under illinois law you know i i do see them as something separate but i am wondering what effect if any they might have on this um on the obama foundation's development of this land going forward is it possible that they would um thwart its development at all separate and apart from the illinois law claims sure so um the draft report has become a final report we refer to that in our brief right it's of course subject to judicial notice the final report and i will advise the court what the final report says without suggesting in any way that the report is relevant but what it does say is that the proposed changes will not sufficiently diminish or remove the overall integrity of the historic district in such a way that it would no longer qualify for listing on the national register so that is um there is an effect and that is because you know you can't build a museum without cutting trees you know and the whole point of building these projects is so that the public can use them um you know even the cases like um scott uh the illinois supreme court's decision involving the u.s steel factory which upset the transfer there because it was on submerged land with only a private benefit even there a very different situation of course the opposite extreme from the case we have here even there the court realizes the court recognizes excuse me that you know the purposes don't stay static um and the court in pepke of course mentions this as well um when the federal review is completed there is an opportunity for judicial review of that final decision those issues should be dealt with there the district court concluded and i the quote is with certainty that the draft report did not bear at all on the issues that have decided and it was said to be relevant only to the public trust claim of course and that was because the um under the test for statutory land the only issue is whether there is legislative authorization and even under the common law test for submerged land where you do look at the public benefits there is um again simply no no relevance a park that has lost a tiny bit of its historic character is still a park can still be enjoyed as a park and a park with a museum in it is still a park and can be enjoyed as a park and so we would ask the court to affirm the judgments of the district court thank you miss solomon mr epstein rebuttal yes um i would like to make several points first with respect to pepke these are not wisconsin factors these are factors which were derived and articulated for the first time in pepke itself and it referred to two wisconsin cases as illustrations about the way in which the overall situation ran so one cannot treat this as though it's the kind of ad hoc importation from another state it turns out that it was created here second i would like to say that there is if you look at illinois central no category whatsoever known as formally submerged land with a standard of liability different from that from never submerged land the passage that was quoted on page 452 of the illinois central case does not stand for the proposition that judge luke that judge dara did in the lucas case what it said was there were two kinds of lands that are submerged one of those are constitutive of what we common use for transportation fishing and so forth and those are subject to an alien ability rule then there's a second class of land which you can take out and sell privately in parcels and that is just plain old ordinary land there is no distinction that was made in that case the words formally submerged are nowhere in that opinion essentially if one thinks about the logic of a public trust doctrine the only sensible way in which to interpret this is what are the ways in which you're going to start to deal with land going forward and if land is not submerged today the fact that it may have been submerged 200 years ago is not going to make the slightest bit of difference what judge lucas what judge dara said in the lucas case was that there was a form of heightened scrutiny that applied to a quote um basically to never submerged lands we submit that that is the same test with lands if they were dry if you look at pepki itself this is clearly a case in which the lands were never submerged if you then take the next stage forward on this and you look at some of the earlier cases including the millhound cases that had to do with building an elevated train and that too was subject to a standard public trust doctrine in which the analysis was it was insufficient consideration given for the deal it was a palpable farce and so therefore it should be set aside last i would like to say that i think council has misconstrued the museum act with respect to this transaction it covers museums it would cover ancillary facilities there is no way that one could read the museum authorization to say that it's going to cover an athletic facility on the one hand or a public library on the other hand those are completely separate and different kinds of organization the statute which authorizes one does not authorize the other and finally with respect to the report that one had the adverse effects are clearly relevant to what's going on given the cost and benefits that have to be done under the public trust doctrine thank you thank you mr epstein the case can i ask mr epstein yes please mr epstein would the plaintiff's analysis um be the same or would it differ and if it would differ how would it differ if the opc was placed in washington park and not jackson park that's a very fair question um the uh simplest way to put this is if there's a cost benefit analysis the dynamics are completely different you do not have to wreck any road you do not have to cut down any trees you don't have to do anything of the kind of destructive nature with respect to jackson park uh and when you go to washington park you would have to expand the roads a little bit and perhaps make some alterations but by and large if this case were built in what was scheduled as was originally designed by the way in washington park we would not have bothered to bring suit because the changes would have been so the important thing to understand is that the social benefits that exist with respect to the city at large and so forth come from having an obama presidential center in the city in fact when the university of chicago did its reports it said washington park was a better location because the traffic jams getting at the jackson park by the lake are far greater given the public transportation that's available in washington park and so forth and now there's also land right next to washington park of suitable size dimension and scope to hold this which would be completely private so one of the things that becomes clearly relevant under all of these statutes is can you avoid needless environmental harm by picking an alternative site can you mitigate that particular harm or rather minimize that harm by changing the structure our views is all those questions which were raised in the aoe report dealing with these particular issues are questions that clearly go to any cost benefit analysis because the pepki factors just to interrupt are factors which were to synthesize cases elsewhere they were not lifted from not mentioned in nowhere referred to in the two wisconsin cases which were just used as illustrations to say that if you build something inside one of the lakes in wisconsin it is not necessarily a per se violation of what's going on so it is an illinois case through and through start to finish top to bottom thank you thank you miss pepstein the case is taken under advisement